IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JACQUELINE ATKINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:05-CV-00024 |
| | ) | |
| FOOD LION, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OPINION

Tilley, Chief Judge

The plaintiff, Jacqueline Atkinson filed suit on January 7, 2005 against her former employer, Food Lion, LLC, alleging violations of 42 U.S.C. § 1981. This case is now before the Court on the defendant Food Lion's Motion for Summary Judgment [Doc. # 13]. For the reasons set forth below, the Defendant's motion will be GRANTED.

I.

The facts in the light most favorable to the non-moving party are as follows: Ms. Atkinson, an African American, was hired as a Technical Analyst in Food Lion's End User Computing Group in December of 2000. Her starting salary was $38,012 per year. Ms. Atkinson was interviewed telephonically by a number of people, including Maxine Barnes, the Manager of the End User Computing Group. Ms. Barnes made the decision to hire Ms. Atkinson and was Ms. Atkinson's

supervisor throughout the period of her employment with Food Lion.

The End User Computing Group was divided into three teams: the Prep Team, the Project Team, and the Trouble Ticket Team. The Prep Team prepared new computers for use, the Project Team installed new hardware and software, and the Trouble Ticket Team handled day to day computer problems. Ms. Atkinson was originally assigned to the Trouble Ticket Team, but in April of 2001, Ms. Barnes promoted her to Supervisor of the Prep Team. During the course of her employment with Food Lion, Ms. Atkinson received several performance reviews, all of which rated her as a satisfactory employee. She was also given the opportunity to take various courses and seminars at Food Lion's expense and received raises in 2001 and 2002, bringing her salary to nearly $45,000 per year.

Ms. Atkinson appears to have had a somewhat difficult relationship with her supervisor, Maxine Barnes. According to Ms. Atkinson, she complained on a number of occasions to the Human Resources Department about inappropriate comments that Ms. Barnes had made to her.[1] She also complained about receiving a smaller annual pay increase than the two white male supervisors in the End User Computing Group.[2] These supervisors were in charge of the Project and Trouble

---

[1] During her deposition, Ms. Atkinson testified that she made these complaints between February and December of 2002. (Pl. Dep. 202:2-9.)

[2] In her Complaint, Ms. Atkinson listed several other issues that she complained about to the Human Resources Department. (Comp. ¶ 7(e).) However, the Court has not been provided with any further information about these complaints in any of the Summary Judgment pleadings.

2

Ticket Teams.

In January of 2003, Food Lion implemented a "Total Cost Reduction" because of the company's failure to meet projected sales forecasts. In order to reduce costs, Food Lion closed forty-one underperforming stores and dramatically reduced its workforce through the elimination of 4,000 positions. As part of its cost-cutting efforts, Food Lion eliminated virtually all funding for new computers. As a result, the services of the Prep Team were no longer necessary. Therefore, the Prep Team employees, including Ms. Atkinson, were among the 4,000 Food Lion employees who lost their jobs during the Total Cost Reduction. Ms. Atkinson was notified on January 9, 2003 that her position as Supervisor of the Prep Team was being eliminated.

All Food Lion employees who lost their jobs during the Total Cost Reduction were provided with information regarding severance payments, benefits, outplacement services, and opportunities for preferential rehiring. Ms. Atkinson never applied for another position with Food Lion after her position in the Prep Team was eliminated, nor did she accept the severance package that was offered to her at the time of her termination. However, Denise Moore, another African-American employee in the Prep Team, applied for and received a position in Food Lion's Legal Department shortly after the Total Cost Reduction.

Ms. Atkinson filed a grievance with the Equal Employment Opportunity Commission on February 3, 2003. She filed for bankruptcy on September 22,

2003 and received a "right to sue" letter from the EEOC on September 26, 2003. At no time did Ms. Atkinson alert the Bankruptcy Court to the existence of her EEOC filing, the "right to sue" letter, or of any other potential claim against Food Lion. The Bankruptcy Court issued its Final Decree in Ms. Atkinson's case on December 16, 2003 and Ms. Atkinson initiated the present suit on January 7, 2005.[3]

Food Lion moved for summary judgment on August 17, 2005 [Doc. # 13] asserting that Ms. Atkinson had failed to make a prima facie case of racial discrimination and retaliation.[4] Ms. Atkinson responded on December 1, 2005[5] [Doc. # 29] and Food Lion filed its Reply on December 12, 2005 [Doc. # 33].

II.

Summary judgment is appropriate only when there is no genuine issue of any

---

[3] Food Lion has not claimed that Ms. Atkinson failed to file the present case within any requisite time period.

[4] Food Lion also contends that Ms. Atkinson should be judicially estopped from bringing the present case because of her failure to disclose the existence of a potential claim against Food Lion in her bankruptcy filings. However, the record is not sufficiently developed to support such a finding at this stage of the proceeding. Nevertheless, because Ms. Atkinson has failed to make a prima facie claim of racial discrimination or retaliation in her substantive pleadings, the Court need not reach this issue.

[5] In her Response, Ms. Atkinson argues that she has also made a claim under the "Equal Pay Act." (Pl.'s Mem. Opp. 2.) In her complaint, however, Ms. Atkinson did not allege that her rights under the Equal Pay Act had been violated nor allege that she had been treated differently than males. No allegation in the complaint supports any claim of gender related discrimination.

4

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those facts identified by the controlling law as essential elements of the claims asserted by the parties. Thus, the materiality of a fact depends on whether the existence of that fact could cause a jury to reach a different outcome. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001). A genuine issue of material fact exists if the evidence is sufficient for a reasonable trier of fact to find in favor of the nonmoving party. Anderson, 477 U.S. at 248. There is no genuine issue of material fact if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In evaluating a motion for summary judgment, the court must view the facts and the inferences reasonably to be drawn from them in the light most favorable to the nonmoving party. See Fed. R. Civ. P. 56(e). Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. Anderson, 477 U.S. at 249. In essence, the analysis concerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. The party opposing the motion may not rest upon its pleadings but must instead provide evidence or point to evidence already on the record that would be sufficient to support a jury verdict in its favor. Anderson, 477 U.S. at 248.

5

In order to survive a motion for summary judgment, a plaintiff under § 1981 may proceed through two avenues of proof. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). The plaintiff may provide "direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision." Id. Or, in the absence of such evidence, the plaintiff may proceed under the burden-shifting method of proof established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Id.

Under McDonnell Douglas, a plaintiff's prima facie case of discrimination or retaliation creates an inference that the employment action was based on unlawful discrimination. To establish a prima facie case of discrimination under § 1981, the plaintiff must show: (1) he or she is a member of a protected class; (2) he or she suffered an adverse employment action; (3) at the time of the adverse employment action, he or she was performing at a level that met the employer's legitimate job expectations; and (4) the position was filled by a similarly qualified applicant outside the protected class. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003); see also Gairola v. Comm. of Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985) (noting that the elements of a prima facie case of discrimination are the same under Title VII and § 1981). To establish a prima facie case of retaliation, a plaintiff must prove (1) he or she engaged in a protected activity; (2) an adverse employment action was taken against him or her; and (3) there was a causal

6

connection between the first two elements.  Spriggs v. Diamond Auto Glass, 242 F.3d 179, 190 (4th Cir. 2001).

If the plaintiff meets this initial burden, a presumption of discrimination arises, and the burden shifts to the defendant to produce, but not to prove, a "legitimate, nondiscriminatory reason" for its decision.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).  If the defendant meets its burden, the presumption of discrimination that arose from the prima facie case disappears, and the burden of proof is left with the plaintiff to show that the employer acted with a discriminatory intent and that its proffered explanation was a pretext for discrimination.  Id. at 252-53.  However, if a plaintiff fails to establish a prima facie case of discrimination or fails to raise a genuine factual dispute concerning the employer's non-discriminatory explanation for the alleged discriminatory act, the defendant is entitled to summary judgment.  Henson v. Liggett Group, Inc., 61 F.3d 270, 275 (4th Cir.1995).

**III.**

**A.**

Ms. Atkinson points to two statements made by her supervisor, Maxine Barnes, as direct evidence of discrimination.  According to Ms. Atkinson, the first time Ms. Barnes saw her after she was hired, Ms. Barnes said, "I'll bet this is the

7

first time you ever got hired sight unseen."[6] (Pl.'s Mem. Opp. 7.) She also contends that Ms. Barnes instructed her not to associate with another African American employee in the Prep Team, Denise Moore. (Pl.'s Mem. Opp. 8.) In addition, Ms. Atkinson claims that two white male supervisors in the End User Computing Department received a higher annual pay increase than she was given. (Pl.'s Mem. Opp. 7-8.) Finally, Ms. Atkinson contends that she was not allowed to apply for another position with Food Lion after the Total Cost Reduction. (Pl.'s Mem. Opp. 5.)

Even if the two comments made by Ms. Barnes reflect a discriminatory animus, there is no evidence that Ms. Barnes was in any way involved in the Total Cost Reduction that resulted in the elimination of Ms. Atkinson's position. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 291 (4th Cir. 2004) ("Regarding adverse employment actions, an employer will be liable not for the improperly motivated person who merely influences the decision, but for the person who in reality makes the decision."). The decision to eliminate the Prep Team as part of the Total Cost Reduction was made at the chief executive level. (Affidavit of Patricia G. Fulcher, Vice President of Human Resources, Food Lion, L.L.C., Ex. A., Message from Rick Anicetti, President & CEO, Food Lion, L.L.C.) Although Ms. Barnes was the supervisor of the End User Computing Group, she

---

[6] As mentioned above, Ms. Barnes was hired after a series of telephone interviews.

8

was not informed of the Total Cost Reduction until the evening before the layoffs were scheduled to take place. (Affidavit of Maxine Barnes, Manager, Client Services & Telecommunications, Food Lion, L.L.C. ¶ 11.) Ms. Barnes was not consulted as to which positions in the End User Computing Group should be eliminated and had no say in the decision to eliminate Ms. Atkinson's position. (Id.) Thus, even if Ms. Barnes' comments were evidence of discriminatory animus, Ms. Atkinson has not produced any evidence tending to show that Ms. Barnes was in any way involved in the decision to eliminate her position during the Total Cost Reduction.

Similarly, Ms. Atkinson has not shown how the higher annual pay increase received by the two white male supervisors in the End User Computing Group is evidence of discrimination. Ms. Atkinson acknowledged during her deposition that pay increases were determined by seniority. (Pl.'s Dep. 118:16-24, 119:5-8.) She also admitted that these two supervisors had more seniority than she did. (Pl.'s Dep. 104:20-105:3.) See Johnson v. Toys "R" US - Del., Inc., 2004 WL 324545 at *4 (4th Cir. 2004) ("Evidence is too speculative if the fact finder cannot rationally choose between mere possibilities of meanings.").

Finally, Ms. Atkinson's contention that she was not given an opportunity to apply for another position with Food Lion after the Total Cost Reduction is not supported by the record. Food Lion provided all employees who lost their jobs during the Total Cost Reduction with information about opportunities to apply for

9

other positions with Food Lion.[7]  (Fulcher Aff. ¶ 11, Ex. A.)  According to Ms. Atkinson's deposition testimony, she chose not to apply for another job with Food Lion.  (Pl.'s Dep. 259:2-5.)  She also chose not to accept the severance package offered to her at the time of her termination.  (Fulcher Aff. ¶ 12.)  Thus, Ms. Atkinson has failed to produce sufficient direct or circumstantial evidence to create a genuine issue of material fact as to whether race was a motivating factor in the decision to eliminate her position during the Total Cost Reduction.

**B.**

Ms. Atkinson has also failed to make a prima facie case of discrimination under the McDonnell-Douglas framework.  It is undisputed that she has established the first three elements of a prima facie case: she is a member of a protected class, she was performing at a satisfactory level, and she suffered an adverse employment action when she was laid off in January of 2003.  However, Ms. Atkinson cannot establish the fourth element of a prima facie case of discrimination.  The entire Prep Team was eliminated as a result of the Total Cost Reduction.  Therefore, Ms. Atkinson's position as Supervisor of the Prep Team was not filled by a person outside of her protected class.  (Barnes Aff. ¶ 12.)

Because Ms. Atkinson was terminated as part of a Reduction in Force, she could potentially satisfy the fourth element of a prima facie case by introducing

---

[7] As mentioned above, Denise Moore, another African American employee who had a position with the Prep Team, applied for and received a position with Food Lion's Legal Department after the Total Cost Reduction.

10

evidence tending to show that Food Lion did not treat race neutrally when making the decision to eliminate her position. Causey v. Balog, 162 F.3d 795, 802-03 (4th Cir. 1998). Ms. Atkinson contends that her position as Supervisor of the Prep Team should be considered comparable to that of the Supervisors of the Project and Trouble Ticket Teams. (Pl.'s Mem. Opp. 4-5.) These supervisory positions were both occupied by white males at the time of the Reduction in Force. Ms. Atkinson therefore argues that the fact she was the only supervisor terminated in the End User Computing Group during the Total Cost Reduction is evidence that Food Lion did not treat race neutrally when determining which positions to eliminate. (Id.) However, this argument ignores the fact that Food Lion decided to eliminate all funding for new computers during the Total Cost Reduction. Therefore, the entire Prep Team, whose primary function was the preparation of new computers for use, was no longer necessary and Ms. Atkinson's supervisory position was rendered superfluous.

In addition, two white employees on the Prep Team, Kimberly Post and Paul Sharp, who had more seniority than Ms. Atkinson, were also laid off during the Total Cost Reduction. (Pl.'s Dep. 307:11-16.) And, as discussed above, another African-American employee of the Prep Team, Denise Moore, was hired by Food Lion's Legal Department after the Total Cost Reduction. Ms. Atkinson has thus failed to produce any evidence tending to show that Food Lion did not treat race neutrally during the Total Cost Reduction.

11

Ms. Atkinson has also failed to make a prima facie case of retaliation. She engaged in protected activity when she complained to the Human Resources Department about Ms. Barnes' comments and about disparities in pay between black and white employees in the End User Computing Department. However, she has not satisfied the third element of a prima facie case of retaliation because she has not proffered any evidence of a causal connection between her complaints and the elimination of the Prep Team during the Total Cost Reduction in January of 2003.[8] See Brackman v. Fauquier County, Virginia, 72 Fed. Appx. 887, 894 (4th Cir. 2003) (holding that plaintiff must establish that "she would not have been terminated *but for* the fact that she engaged in statutorily protected activity" to make a prima facie case of retaliation); Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir.1998) ("To satisfy the third element, the employer must have taken the adverse employment action *because* the plaintiff engaged in protected activity."). Ms. Atkinson has failed to make a prima facie case of retaliation because she has not shown any connection between the decision to eliminate the Prep Team and the complaints she made to the Human Resources Department.

---

[8] It is also worth noting that during the period in which Ms. Atkinson complained about Ms. Barnes to the Human Resources Department (between February and December of 2002), no adverse employment action was taken against Ms. Atkinson. Indeed, Ms. Atkinson received a pay increase in December of 2002 at a rate equal to that received by the other employees in her group. (Pl.'s Dep. 229:6-21.)

Furthermore, even if Ms. Atkinson had made a prima facie case of discrimination and retaliation, Food Lion has provided a legitimate business reason for her termination: funding for new computers was eliminated as a result of the Total Cost Reduction and thus the functions performed by the Prep Team were no longer necessary. Ms. Atkinson claims that because the Prep Team was busier than the other two teams in the End User Computing Department at the time of the Total Cost Reduction, Food Lion's proffered business reason is pretextual. (Pl.'s Mem. Opp. 5.) However, "when an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (citation omitted). Nevertheless, Ms. Atkinson's claim that the Prep Team was busy when there were new computers to install has no force in the face of Food Lion's decision to eliminate funding for new computers. Ms. Atkinson has not provided sufficient evidence to create a genuine issue of material fact as to whether Food Lion's proffered justification is pretextual.

### IV.

Ms. Atkinson has not made a prima facie case of racial discrimination or retaliation. Therefore, for the reasons set forth above, the defendant Food Lion's Motion for Summary Judgment will be GRANTED. Each side will bear its own

13

costs in this action.

    This the day of December 30, 2005

                                                                      /s/ N. Carlton Tilley, Jr.
                                                                  United States District Judge